McFarland
delivered the following dissenting opinion :
This cause was determined at the September Term, 1872, and an opinion rendered holding that the act of the Legislature passed on the 23d of April, 1866, enacting that David- Fry, tax collector for Greene county, be allowed the further time of six months from the date of the act to collect and account for his liabilities as collector, operates to release the complainants, who were his sureties on his bond for the year I860, they not having assented to such extension *434 of time. A rehearing was ordered, as it was understood principally upon the question whether the act in question was in violation of any clause of the Constitution. The law seems to have been intended to operate in two respects — first, to allow Fry six months longer time to collect the taxes. This of itself would not seem necessarily to affect the rights of the sureties or of the State. He might be allowed to act as tax collector for six months longer time, upon the principle- that á sheriff is allowed to act as sheriff, after his term of office has expired, for the purpose of winding up his business; but this without affecting his liability for his previous failure of duty. But this act also provides that he shall have the six months longer time to settle and account for his liabilities; and this implies that the right of the State to proceed against him, under the law as it then stood, for his failure of duty — even his failure to pay over money then in his hands — was suspended during this six months; and the question is, had the Legislature the power to pass this law? It is conceded that the Legislature had the power, unless there be found an express restriction against it in the Constitution. In the 8th clause of Art. XI. of the Constitution are the following words: “The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual, or individuals, rights, privileges, or immunities or exemptions, other than such as *435 may be by tbe same law extended to any member of the community who may be able to bring himself within the provisions of such law.” Then follows a proviso in regard to corporations. As the law stood at the passage of this act, it applied equally to all tax collectors in the State, and they were required to account for and pay over money by them collected, or that ought to be by them collected, by the 31st day of December in each year, unless the tax books. were not received in time, and then they were allowed a reasonable time thereafter; and this was to be the tenor and effect of their bonds. It may be assumed that Fry, by his failure to settle and account for the taxes by the last day of December, had become liable to be proceeded against under the law as it then stood, and that this liability was then impending over him and his sureties; thereupon, to meet this emergency, this act was passed. It does not profess to alter or amend the general laws of the State as to tax collectors, but simply to extend the. time as to David Fry from the 31st day of December, 1865, until the 23d of October, 1866. It was an amendment of the general provisions of the previous laws, but applicable only to the one tax collector, and applicable only for this one term. This was not a general law. It was not intended to have any general effect, after affecting its purpose as to this one tax collector for the one term, it became a dead letter upon the statute book, and the previous general laws remained as before. • What was this but suspending the general law for the benefit of David Fry? *436 Taking the laws as a whole, including this act, it would read that all tax collectors shall settle their-accounts and pay over the taxes by the 31st of December for each year; • but this general law shall not operate as to David Ery, tax collector of Greene county, for the year 1865, and for that year he shall have until the 23d October, 1866. I am of opinion that this is in direct violation of the plain letter and spirit of the Constitution. It can not escape notice that the effect of this law would be to allow Ery to keep the money already collected by him, and then actually in his hands, for six months longer time, without any reason or consideration for the indulgence; and, for all the Legislature knew, or could be reasonably supposed to know, he had at that very time every dollar of the money in his hands.
It is perhaps true that laws similar to .this have been repeatedly passed by the Legislature, and so far as I have ascertained the validity of such laws has not been judicially determined; but I see nothing in this sort of legislation to entitle it to be exempted from the operation of the same constitutional restrictions that apply to other laws.
It is argued that the Legislature has general control of the finances of the State, and may pass such laws in' regard thereto as the interests of the public, in its opinion, may demand. The case of McEwen v. The Governor, 5 Hum., is relied upon. That case held that the Legislature had power to provide by resolution for the appointment of commissioners to compromise a suit pending against the sureties of the *437 ■Superintendent of Public Instruction for moneys due the State, upon principles of equity. It was said the Legislature has unlimited power over the money and property of the State, except in so far as its power is restricted by the Constitution; and this may readily be conceded.
I do not see that the question here is controlled by the fact that it is the right of the State that is affected by the law. I think the Legislature has no more power to violate constitutional restrictions where the rights of the State only are affected, than it has where the law affects more directly interests arising between individuals; and, in fact, the rights of all citizens of the State are indirectly affected in a case of this character; for if money collected as taxes from the people is released — is given away to the collector — ■ this increases the burthen upon every other taxpayer in the State, and they have the same right to the protection of the Constitution against this species of class legislation as any other.
But it is again argued that the Legislature has the power to authorize contracts' to be entered into in behalf of the State; that the bonds of all. collectors are mere contracts, and these contracts may be changed by agreement between the parties and the State through the Legislature. I do not think this law has any of the elements of a contract. It was enacted as a law, and should be tested as a law. Fry and his ‘sureties were not parties, and had nothing to do with it — it was an act of the law-making power. It did not authorize any one to make any contract with Fry *438 or his sureties, nor was any made after its passage. The Legislature had no doubt the power to change the general law applicable to tax collectors, and require different duties of them and provide for' different remedies against them, but I deny that, without changing the general law, the Legislature may declare that the law shall not be enforced against a particular individual.
It is again argued that, whether the law was valid or not, it was acted upon and obeyed by the officers of the State, and the injury to the sureties thereby resulted. It is true no steps were taken against Fry or his sureties during the six months. This delay of itself did not affect the sureties, because if it was mere indulgence it would not affect their rights. This delay might well have occurred without such law. The question is, not whether there was delay, but whether there was a valid law or contract authorizing the delay. If the sureties had filed their bill quia timet against Fry, would the act in question have defeated their remedy ?' If it was an unconstitutional law, it would not. It is true the Attorney-General was not likely to disregard the law; but if he had done so, and instituted proceedings against Fry and his sureties before the expiration of the six months, the question as to the validity of the law would have been raised. The officers of the State are no more bound to submit to and obey an unconstitutional law than any other citizen. Suppose the Legislature should pass a law that no Attorney-General shall prosecute A. B. for murder, alleged to have been committed by *439 him, or that they shall not prosecute the case for six months, would the Attorney-General be bound to obey this, either as a law or as a direction of the Legislature? I should say not. I do not agree with the' Attorney-General that the act was obligatory upon the officers of the State, as a resolution or as a direction to them in the discharge of their duties. I think it is law or nothing. I think the Legislature has the power to regulate the' duties of the officers of the State by general laws, and do not doubt it in special cases not provided for by general laws to direct the institution of suit, or the compromising or dismissal of suits, in behalf of the State. But if the Legislature assumes, either in the form of a law or resolution, to direct the Attorney-General to execute the law against one defaulting officer and not to execute it against another, and he chooses to obey this direction, the consequence is precisely the same as if he had taken the same course without such direction. I think no latitude of construction should be allowed in determining the power of the Legislature in a case of this character. To do so, is to encourage legislation the effect of which is to enable defaulting officers, with public taxes in their hands, to avoid their just liability by appealing to legislative favoritism, and thus throw the loss upon the people.
Courts should be slow to declare void an act of the Legislature except upon clear grounds, but should do so without hesitation when it appears plainly to be in violation of a constitutional restriction.